**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| PHOTO STENCIL, LLC | ) | Case No. 16-16897-MER |
| | ) | Chapter 11 |
| Debtor. | ) | |
| PHOTO STENCIL, LLC | ) | |
| Plaintiff, | ) | Adv. Pro. 17- -MER |
| v. | ) | |
| FORUM FINANCIAL SERVICES, INC. | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY RELIEF**

The Plaintiff, Photo Stencil, LLC ("Plaintiff"), by and through its attorneys, Kutner Brinen, P.C., states its Complaint for Declaratory Relief against Forum Financial Services, Inc. ("Defendant") requesting a determination that certain equipment obtained from the Defendant by the Plaintiff is property of the estate subject to Defendant's security interest as opposed to being leased property and as grounds therefor states as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1. This Adversary Proceeding is commenced pursuant to Rule 7001, *et seq.*, of the Federal Rules of Bankruptcy Procedure, and Section 105 of the Bankruptcy Code.

2. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 because this matter arises under the Bankruptcy Code in matters related to the Debtor's Chapter 11 Bankruptcy Case.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (K), and (O) and the Plaintiff consents to the entry of final orders and judgment by the Bankruptcy Court.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

5. Plaintiff is a Colorado limited liability company operating out of 16080 Table Mountain Parkway, Suite 100, Golden, Colorado 80403.

6. Defendant is a corporation with its headquarters at 275 West Campbell Road, Suite 320, Richardson, Texas 75080.

## II. FACTUAL BACKGROUND

7. Plaintiff filed its voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on July 12, 2016 ("Petition Date").

8. Plaintiff is engaged in business as a designer and manufacturer of high-performance stencils, squeegee blades, and tooling for the surface mount assembly, solar, and semiconductor industries. Among other things, the Debtor designs and manufactures high end stencils for the electrical component industry and is the only such company with such capability in North America.

9. Pre-Petition, on or about July 23, 2013, Plaintiff entered into a Master Lease Agreement (together with all attachments and amendments thereto, the "Master Lease") with Defendant. A copy of the Master Lease is attached hereto as Exhibit A.

10. Pursuant to the Master Lease, Plaintiff acquired a LPKF StencilLaser, Model Number G6080, bearing Serial Number 1304100290, together with all software, fixtures, controls, and associated parts (the "Equipment") from Defendant.

11. Section 7(b) of the Equipment Schedule Attached to the Master Lease provides that Plaintiff "shall have the option to purchase all, but not less than all, the Equipment at the end of the Initial Term, for its' then Fair Market Value, not to exceed $94,286.40, which is 30% of the Original Equipment Value." The Equipment Schedule is attached hereto as Exhibit B.

12. On or about September 17, 2013, Defendant filed a UCC-1 Financing Statement with the Delaware Secretary of State, Initial Filing # 2013 3609972. A copy of the UCC-1 Financial Statement is attached hereto as Exhibit C.

13. On or about January 27, 2016, the Plaintiff and Defendant restructured the Equipment Schedule. The Restructured Equipment Schedule is attached hereto as Exhibit D.

14. Section 8(c) of the Restructured Equipment Schedule provides that "[u]pon 30 days receipt of written notice by [Defendant] from [Plaintiff]...[Plaintiff] shall have the option to purchase all, but not less than all, the Equipment at the end of the Initial Term, for $1.00."

15. On August 25, 2016, Defendant filed a Motion for Relief from Stay or, in the Alternative, for Adequate Protection ("Motion for Relief").

16. On September 6, 2016, Plaintiff filed an Objection to the Motion for Relief, asserting that the Master Lease is a disguised financing transaction and not a true lease pursuant to C.R.S. § 4-1-203(b).

17. The Court conducted a hearing on the Motion for Relief on September 14, 2016, at which Defendant argued that the Master Lease was a true lease.

18. Despite the Defendant's claim that the Master Lease is a true lease, the Defendant has now filed a second motion for relief from stay and has asserted that the value of the Equipment has increased and that the value is relevant to the relief from stay issue. Such would not be the case if the Master Lease was a true lease.

19. Pursuant to the terms of the Master Lease, the Plaintiff bears all of the risk, cost and expense associated with ownership of the Equipment.

## III. FIRST CLAIM FOR RELIEF

## (Declaratory Judgment)

20. Plaintiff realleges and incorporates herein the allegations set forth in paragraphs 1 through 17.

21. Plaintiff states that the Master Lease is a financing transaction pursuant to C.R.S. § 4-1-203(b) through which the Plaintiff acquired the Equipment subject to a security interest held by the Defendant.

22. Upon information and belief, Defendant believes that the Master Lease is a true lease presumably subject to treatment under 11 U.S.C. § 365(a).

23. The Plaintiff claims that it is the owner of the Equipment subject to the security interest of the Defendant.

24. The Plaintiff has paid the Defendant substantial consideration for the acquisition of the Equipment along with its ongoing care and expense.

25. Declaratory relief is necessary to determine the rights of the Parties with respect to the treatment of Defendant's interest with respect to the Equipment.

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against the Defendant declaring the Master Lease Agreement a financing transaction, that the Equipment is

property of the estate owned by the Plaintiff, and for such further and additional relief as to the Court may appear proper.

Dated: January 26, 2017.

Respectfully submitted,

By: */s/Lee M. Kutner*

Lee M. Kutner #10966
Keri L. Riley, #47605
**KUTNER BRINEN, P.C.**
1660 Lincoln St., Suite 1850
Denver, CO 80264
Telephone: (303) 832-2400
Telecopy: (303) 832-1510
E-Mail: klr@kutnerlaw.com
lmk@kutnerlaw.com

ORIGINAL

**FORUM FINANCIAL SERVICES, INC.** **Agreement No. 8336**

# MASTER LEASE AGREEMENT

This MASTER LEASE AGREEMENT dated as of July 23, 2013 by and between FORUM FINANCIAL SERVICES, INC., a Texas corporation, having its principal place of business at 275 West Campbell Road, Suite 320, Richardson, Texas 75080 ("Lessor"), and PHOTO STENCIL, LLC, a Delaware company, having its principal place of business at 4725 Centennial Blvd., Colorado Springs, Colorado 80919 ("Lessee").

**1. EQUIPMENT LEASED.**

Subject to the terms and conditions hereinafter set forth in this Master Lease Agreement, Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the units of tangible personal property (hereinafter collectively referred to as "Equipment" and individually as a "Unit" or "Item") listed on each Equipment Schedule executed, from time to time, pursuant to this Master Lease Agreement. Each Equipment Schedule (hereinafter being referred to as "Lease") shall incorporate therein all of the terms and conditions of this Master Lease Agreement and shall contain such additional terms and conditions as Lessor and Lessee shall agree upon.

**2. TERM.**

The term of this Master Lease shall commence on the date set forth above, and shall continue so long as any Lease remains in effect. The lease term for each Item shall commence on the date on which the Equipment or any Item has been delivered to Lessee, installed and accepted by Lessee (hereinafter referred to as the "Acceptance Date"). The lease term shall continue for the number of full months set forth in such Lease (hereinafter referred to as the "Initial Term"), commencing on the first day of the month following the latest Acceptance Date for any Item (hereinafter referred to as the "Initial Term Commencement Date"). Lessee shall execute and deliver to Lessor the Acceptance Certificate for the Equipment confirming such Acceptance Date on such date.

**3. RENTALS.**

The monthly rent payable by Lessee for each Item on any Lease (hereinafter referred to as "Monthly Rent") shall be set forth in such Lease. Lessee shall pay to Lessor, as rental for the Equipment, the sum of (i) Monthly Rent per month, payable in advance on the Initial Term Commencement Date and on the first day of each month thereafter during the Initial Term of the Lease, and (ii) an amount equal to one-thirtieth of the Monthly Rent for each Item for each day which has elapsed from and including the Acceptance Date of such Item to the Initial Term Commencement Date, which amount shall be paid on the Acceptance Date and monthly thereafter. If any portion of Lessee's Monthly Rent continues unpaid for five (5) days or more following the due date, including Sundays and holidays, Lessee will pay an administrative late charge of five (5) cents for each one dollar ($1.00) of the scheduled Monthly Rent payment. In addition to the administrative late charge, any payments (of rent or otherwise) which are not paid within five (5) days of their due date shall be payable on demand and shall bear interest on such amount at the lesser of 1.5% per month or the maximum allowable rate of interest permitted by law. All Monthly Rent and other sums due hereunder shall be paid at the address of Lessor set forth above or at such other place as Lessor shall designate in writing, or, if to an assignee of Lessor, at such place as such assignee shall designate in writing.

**4. NET LEASE.**

Lessor and Lessee acknowledge and agree that each Lease constitutes a net lease, and that Lessee's obligation to pay all Monthly Rent and any and all sums payable by Lessee under any Lease, shall be absolute and unconditional. Lessee's obligations shall not be subject to any abatement, reduction, setoff, defense, counterclaim, interruption, deferment or recoupment for any reason whatsoever, and that such payments shall be and continue to be payable in all events. No Lease shall terminate, nor shall the respective obligations of Lessor or Lessee be affected, by reason of any defect in the condition, operation, fitness for use, damage or destruction of or to the Equipment or any Unit thereof, or any interruption or cessation in use or possession for any reason whatsoever. Each Lease shall be binding upon the Lessee, its successors and assigns and shall inure to the benefit of Lessor and its successors and assigns, and all references to Lessor shall include such successors and assigns.

**5. TAXES.**

During the term of each Lease, Lessee shall promptly pay when due or reimburse and indemnify and hold Lessor harmless from and against all Taxes, as hereinafter defined. The term "Taxes" as used herein shall mean all taxes, fees or other charges of any nature whatsoever (together with any related interest or penalties not arising from the negligence on the part of Lessor) now or hereafter imposed or assessed during the term of each Lease against Lessor, Lessee or the Equipment by any Federal, state, county, or local governmental authority upon or with respect to the Equipment or upon the ordering, purchase, sale, ownership, delivery, leasing, possession, use, operation, return or other disposition thereof or upon the rents, receipts or earnings arising therefrom or upon or with respect to any Lease (excepting only Federal, state and local taxes based on or measured by the net income of Lessor). Notwithstanding the foregoing, Lessor shall file such tax returns relating to sales and property taxes as may, pursuant to applicable law, be required to be filed by Lessor, and remit the amount thereof, and Lessee shall reimburse Lessor promptly upon demand for the amount of such taxes.

**6. WARRANTIES.**

(a) LESSEE ACKNOWLEDGES THAT LESSOR HAS MADE NO REPRESENTATION OR WARRANTIES OF ANY KIND, EXPRESSED OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE DESIGN, PERFORMANCE, OR CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. LESSOR SHALL HAVE NO LIABILITY TO LESSEE FOR ANY CLAIM, LOSS OR DAMAGE CAUSED BY OR ARISING IN ANY WAY IN CONNECTION WITH THE EQUIPMENT. NOR SHALL THERE BE ANY ABATEMENT OF RENTAL, FOR ANY REASON INCLUDING CLAIMS ARISING OUT OF OR IN CONNECTION WITH ANY DEFICIENCY OR DEFECT IN THE EQUIPMENT, THE USE OR PERFORMANCE OF THE EQUIPMENT, OR ANY LOSS OF BUSINESS OR OTHER CONSEQUENTIAL LOSS OR DAMAGE WHETHER OR NOT RESULTING FROM ANY OF THE FOREGOING.

(b) Lessor hereby appoints Lessee as Lessor's agent to assert, during the term of the applicable Lease, any and all manufacturer's warranties, with respect to the Equipment to the extent assignable by Lessor, provided, however, that Lessee shall indemnify and hold Lessor or its assignee harmless from and against any and all claims, costs, expenses, damages, losses and liabilities incurred or suffered by Lessor as a result of or incident to any action by Lessee in connection therewith.

Lessee's Initials: ________

EXHIBIT A

**7. TITLE AND ASSIGNMENT.**

(a) Nothing contained in any Lease shall give or convey to Lessee any right, title or interest in or to the Equipment except as a lessee as set forth therein. Lessee represents and agrees that Lessee shall hold the Equipment subject and subordinate to the rights of the owner, Lessor, any assignee of the Lessor (an "Assignee") and any person or entity to whom Lessor grants a security interest in any of the Equipment (a "Secured Party"). Lessee shall execute and immediately deliver such documentation, including Uniform Commercial Code financing statements, as are requested by Lessor for such purposes. Lessee shall, at its expense, protect and defend Lessor's title as well as the interest of any Assignee and any Secured Party against all persons claiming against, by or through Lessee and shall at all times keep the Equipment free and clear from any legal process, liens or encumbrances whatsoever (except any placed thereon by Lessor) and shall give Lessor immediate written notice thereof and shall indemnify and hold Lessor, any Assignee and any Secured Party harmless from and against any loss caused thereby.

(b) If provided by Lessor, Lessee shall affix and maintain tags, decals or plates to the Equipment indicating ownership and title to the Equipment in Lessor (or any Assignee) and Lessee shall not permit the removal or concealment of such tags. Lessee shall keep the Equipment free from any marking or labeling which might be interpreted as a claim of ownership thereof by Lessee or any party other than Lessor or any Assignee. Upon the request of Lessor, Lessee shall at reasonable times during business hours make the Equipment available to Lessor for inspection at the place where it is normally located and shall make Lessee's log and maintenance records pertaining to the Equipment available to Lessor for inspection.

(c) Lessor may assign to an Assignee, and Lessee hereby consents to the assignment of, all or any part of the Lessor's right, title and interest in and to any Lease and the Equipment. Lessee acknowledges and understands that the terms and conditions of each Lease have been fixed by Lessor in anticipation of its ability to sell and assign its interest or grant a security interest under each Lease and the Equipment listed therein in whole or in part to a Secured Party for the purpose of securing a loan to the Lessor. The Lessor may also sell and assign its rights as owner and lessor of the Equipment under any Lease to an Assignee, which may be represented by a bank or trust company acting as a trustee for the Assignee. After such assignments the term Lessor shall mean, as the case may be, such Assignee and any Secured Party. Notwithstanding the foregoing, any assignment by Lessor shall not relieve Lessor of its obligations to Lessee hereunder. Lessee, upon receipt of notice of any such assignment or assignments and instructions from Lessor, shall:

(i) pay and perform its obligations hereunder with respect to the assigned Lease to such Assignee and any Secured Party and acknowledge that the Assignee and any Secured Party shall have and be entitled to exercise any and all discretion, rights and powers hereunder with respect to the assigned Lease, provided, however that such Assignee or Secured Party shall take no action to interfere with Lessee's quiet enjoyment and use of the Equipment so long as Lessee is not in default of any of the provisions hereof with respect to the assigned Lease and such Assignee or Secured Party continues to receive all amounts of Monthly Rent due as specified in the assigned Lease;

(ii) not permit the assigned Lease to be amended, modified or terminated without the prior written consent for such from Assignee and any Secured Party;

(iii) not look to Assignee or any Secured party to perform any of Lessor's obligations hereunder;

(iv) send to Assignee and any Secured Party as well as Lessor copies of any notices which are required hereunder to be sent to Lessor.

**8. DELIVERY, USE, AND RETURN OF EQUIPMENT.**

(a) Upon delivery of the Equipment to Lessee, Lessee shall pay and hereby assumes all transportation, installation, rigging, and in-transit insurance charges with respect to the Equipment. In the case of a sale and leaseback transaction, Lessee shall, upon the request of Lessor, certify the date the Equipment was first put into use.

(b) Lessee shall, at all times during the term of the Lease, be entitled to unlimited use of the Equipment. Lessee will comply with all laws, regulations, and ordinances, and all applicable requirements of the manufacturer of the Equipment which apply to the physical possession, use, operation, condition, and maintenance of the Equipment.

(c) Lessee may, upon receipt of prior written consent of Lessor, at its own expense, make alterations or add attachments to the Equipment (an "Upgrade"), provided such Upgrade does not interfere with the normal operation or maintenance of the Equipment or with Lessee's ability to obtain and maintain the maintenance contract required by Section 9 hereof. During the term of the Lease and provided Lessee is not in default, all Upgrades shall be the property of Lessee; and no liens, encumbrances or interest may be granted by Lessee in such Upgrades which impair Lessor's rights, title and interest in the Equipment. At the request of Lessor, Lessee shall (and, absent such request, Lessee may), upon expiration or termination of the Lease covering such Equipment, remove any such Upgrade and restore the Equipment to its original condition (ordinary wear and tear excepted), all at Lessee's expense, prior to returning the Equipment to Lessor.

(d) Upon the termination (by expiration or otherwise) of each Lease, Lessee shall, pursuant to Lessor's instructions and at Lessee's full expense, de-install, pack and return the Equipment to Lessor in the same operating order, repair, condition and appearance as when received, reasonable wear and tear excepted. Lessee shall return the Equipment to Lessor at its address set forth herein or at such other address within the continental United States as directed by Lessor. Until the return of the Equipment to Lessor, Lessee shall be obligated to pay the Monthly Rent and all other sums due hereunder.

**9. MAINTENANCE AND REPAIR.**

During the term of each Lease, Lessee shall, at its sole expense, maintain the Equipment in good operating order, repair, condition and appearance and make all necessary repairs to protect the Equipment from deterioration, other than normal wear and tear. Lessee shall not use or permit the Equipment to be used for any purpose for which, in the opinion of the manufacturer, the Equipment is not designed or intended. Lessee shall, during the term of each Lease, at its sole expense, maintain in full force and effect a contract with the manufacturer or such other party acceptable to Lessor, covering at least prime shift maintenance of the Equipment. Lessee shall furnish Lessor, upon request, with a copy of such maintenance contract (or warranty) and all amendments and supplements thereto. If Lessee has the Equipment maintained by a party other than the manufacturer, Lessee hereby assumes and agrees to pay any costs necessary to have the manufacturer re-certify the Equipment at the scheduled termination of the lease term, which lease term shall continue upon the same terms and conditions until such re-certification has been obtained.

**10. REPRESENTATIONS AND WARRANTIES OF LESSEE.**

(a) Lessee hereby represents, warrants and covenants that, with respect to this Master Lease Agreement and each Lease executed hereunder; (i) the execution, delivery and performance thereof by the Lessee have been duly authorized by all necessary corporate action, (ii) this Master Lease Agreement and each Lease will be in full force and effect and constitutes a valid obligation binding upon and enforceable against Lessee in accordance with its terms, (iii) the Equipment covered by each Lease is accurately described in the Lease and all documents relating thereto, (iv) the Equipment is personal property and when subject to use by the Lessee will not be or become fixtures under applicable law, and (v) any and all financial statements and other information with respect to Lessee supplied to Lessor at any time by Lessee are true, accurate and complete.

(b) Prior to and during the term of any Lease, Lessee will furnish Lessor, when reasonably available, Lessee's audited financial statements. If Lessee is a subsidiary of another company, Lessee shall supply such parent's financial statements and guarantees as are acceptable to Lessor.

(c) Lessee, upon execution of this Master Lease Agreement and thereafter upon execution of each Lease, shall provide Lessor with (i) an incumbency certificate certifying that the person signing for Lessee holds the office he or she purports to hold and has authority to sign on behalf of Lessee; (ii) an agreement with Lessor's assignee with regard to any assignment as referred to in Section 7(c); (iii) the purchase documents if Lessee has sold or assigned its interest in the Equipment to Lessor; (iv) an insurance certificate pursuant to Section 14 hereof; and (v) all other documents as Lessor may reasonably request. If Lessee shall fail to timely and properly deliver any of the aforesaid documents when due, Lessor at its sole option and notwithstanding anything to the contrary contained in Section 2 hereof, may postpone the commencement of the Initial Term, increase the Monthly Rent to recover costs incurred by Lessor, or terminate the Lease as provided in Section 15.

(d) If Lessee (i) changes the form of organiz___ of its business, (ii) merges or consolidates with another ___, (iii) changes its name or (iv) changes its state of organization or formation, then Lessee shall so notify Lessor, any Assignee and any Secured Party, within thirty (30) days of such event.

**11. SOFTWARE.**

Lessee and Lessor acknowledge that the Equipment may contain or include certain software ("Software") in which neither Lessor nor Lessee has any ownership or other proprietary rights. Where required by the owner or licensee of the Software, Lessee shall enter into a license agreement for the use of the Software. Any Software agreement shall be separate and distinct from the Lease, and Lessor shall not have any obligations whatsoever thereunder. In the event a Lease includes an amount attributable to a fee for the use of the Software, Lessee agrees that all such amounts shall be deemed Monthly Rent and subject to all of the provisions of the Lease.

**12. QUIET ENJOYMENT.**

Lessor covenants that so long as Lessee is not in default, and keeps and performs each and every covenant, condition and agreement hereunder, Lessee will quietly possess the Equipment subject to and in accordance with the provisions of the Lease.

**13. INDEMNITY.**

Lessee hereby assumes all liability for, and does hereby agree to indemnify, protect and hold Lessor, any Assignee and any Secured Party harmless from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, or expenses (including legal fees and expenses), arising out of the manufacture, purchase, ownership, selection, possession, leasing, operation, control, use, maintenance, delivery, return or other disposition of any Unit. Lessee shall give Lessor and any Assignee prompt notice of any occurrence, event or condition in connection with which Lessor or any Assignee may be entitled to indemnification pursuant to the provisions of this Section 13. The provisions of this Section 13 shall survive the termination of this Master Lease Agreement and any Lease. At the request of Lessor, Lessee shall undertake to defend at Lessee's expense, Lessor, any Assignee and any Secured Party, in any claim, action or suit covered by this Section 13.

**14. RISK OF LOSS, INSURANCE.**

(a) Lessee hereby assumes and shall bear the entire risk of loss and damage, of the Equipment from any and every cause whatsoever as of the date of vendor's shipment of the Equipment to Lessee (F.O.B. vendor's point of shipment) and throughout the Initial Term and any extension thereof and until the Equipment is returned to Lessor. No loss or damage to the Equipment or any part thereof shall impair any obligation of Lessee under this Master Lease Agreement, which shall continue in full force and effect.

(b) During the term of the Lease, Lessee, at its own expense, shall insure the Equipment against all risks and in such amounts as Lessor shall reasonably require (but not less than the Casualty Value of the Equipment) with carriers acceptable to Lessor. Such insurance shall also provide for loss payable endorsement to Lessor, any Assignee and any Secured Party. Lessee shall also maintain comprehensive public liability insurance satisfactory to Lessor, but in no event shall the amount of liability insurance be less than $2 million per occurrence. All such insurance shall name Lessor, any Assignee and any Secured Party as additional insured parties, and the policies shall provide that they may not be terminated or modified without at least 30 days' prior written notice to Lessor, any Assignee and any Secured Party.

(c) In the event of loss or damage of any Unit, Lessee shall use all reasonable efforts to place the Unit in good repair, condition and working order to the satisfaction of Lessor within 60 days of such loss or damage, unless the manufacturer determines that such Unit has been irreparably damaged, in which case Lessee shall, within 10 days of the manufacturer's determination of irreparable loss, make its election to either pay Lessor the Casualty Value (as set forth in Annex A to the Lease) for the irreparably damaged Unit or replace the irreparably damaged unit, all as provided hereinafter.

(d) In the event that Lessee elects to pay Lessor the Casualty Value for the irreparably damaged Unit, Lessee shall pay such amount to Lessor on the first day of the month following the election by Lessee as provided in (c) above and pay all Monthly Rent for the Equipment up to the date that the Casualty Value is paid to Lessor. If not all the Equipment is irreparably damaged, the Equipment Value (as identified in the Lease) of the irreparably damaged Unit shall be multiplied by the applicable percentage set forth in Annex A to compute the Casualty Value therefor, and the Monthly Rental for the undamaged Equipment remaining due shall be that amount resulting from multiplying the original Monthly Rental by the ratio of the original Equipment Value of the undamaged Equipment divided by the Equipment Value for all the Equipment prior to the damage.

(e) Should Lessee elect to replace the irreparably damaged Unit, Lessee shall continue all payments under the Lease without interruption as if no such damage, loss or destruction had occurred, and shall replace such irreparably damaged Unit within 30 days following the date the manufacturer determines the Unit is irreparable, paying all such costs associated therewith, and so that Lessor has good and valid title thereto. The "Replacement Equipment" shall have a fair market value at the time of replacement equal to or greater than the fair market value of the Unit thereof for which replacement is made, and anticipated to have a fair market value which the Unit thereof for which replacement is made would have had at the end of the Initial Term, and be the same type and of at least equal capacity to the Unit for which the replacement is being made. Upon delivery, such Replacement Equipment shall become subject to all the terms and conditions of the Lease and this Master Lease Agreement. The fair market value of the Unit shall be determined by the Lessor and shall be based upon its value in continued use.

**15. DEFAULT, REMEDIES.**

(a) The occurrence of any one or more of the following events (herein called "Events of Default") shall constitute a default under a Lease.

(i) Lessee fails to pay any installment of Monthly Rent or other charge payable by Lessee under such Lease as and when the same becomes due and payable and such default continues for a period of ten (10) days; or

(ii) Lessee fails to observe or perform any of the other obligations required to be observed or performed by Lessee of such Lease or the inaccuracy in any material respect of any representation or warranty made by the Lessee in such Lease or in any document or certificate furnished to the Lessor in connection therewith, which default or inaccuracy shall continue for a period of fifteen (15) days after notice; or

(iii) Lessee makes an assignment for the benefit of creditors; admits in writing its inability to pay its debts as they become due; files a voluntary petition in bankruptcy; is adjudicated as a bankrupt; files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future statute, law or regulation, or files any answer admitting, or fails to deny the material allegations of a petition filed against it for any such relief; consents to or acquiesces in the appointment of a trustee, receiver, or liquidator of it or of all or any substantial part of its assets or properties, or if it or its shareholders shall take any action to effect its dissolution or liquidation; or

(iv) The failure by Lessee, within thirty (30) days after the commencement of any proceeding against Lessee seeking any reorganization, arrangement composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, to obtain the dismissal of such proceeding, or if within thirty (30) days after the appointment without Lessee's consent or acquiescence of any trustee, receiver or liquidator of Lessee or of all or any substantial part of its assets and properties, such appointment shall not be vacated; or

(v) The default by Lessee under any other Lease or other agreement between Lessee and Lessor, any Assignee or any Secured Party.

(b) Upon the occurrence of any Event of Default, Lessor may, without notice to Lessee, exercise all of the following remedies, as Lessor in its sole discretion may elect.

(i) Upon the demand of Lessor, Lessee shall immediately, pursuant to Lessor's instructions and at Lessee's full expense, de-install, pack and return the Equipment to Lessor in the same operating order, repair, condition and appearance as when received, reasonable wear and tear excepted. Lessee shall return the Equipment to Lessor at its address set forth herein or at such other address within the continental United States as directed by Lessor. Lessee shall immediately pay Lessor the Casualty Value (as set forth in Annex A to the Lease, determined as of the date of the Lessor's demand for return of the Equipment) of each Unit that Lessor does

not receive from Lessee in accor with this Section 15(b)(i). At Lessor's sole option and at 's full expense, Lessor itself or its contractor may enter upon the premises where the Equipment is located and repossess and remove the Equipment or render the Equipment unusable without removal. If Lessor subsequently takes possession of any Unit after Lessee becomes obligated to pay the Casualty Value of that Unit as provided in this Section 15(b)(i), Lessee will be entitled to a credit for the lesser of the liquidation value of that Unit and the actual amount Lessor receives from the sale of that Unit. Notwithstanding anything herein to the contrary, Lessor will never have any duty or obligation to repossess any Equipment or dispose of any Equipment in a commercially reasonable manner.

(ii) Upon the demand of Lessor, Lessee shall immediately pay to Lessor an amount equal to the total of all Monthly Rent and other amounts due and to become due under this Master Lease Agreement and all Leases plus all costs, damages and expenses incurred by Lessor by reason of the occurrence of any Event of Default or the exercise of any remedy by Lessor, including, but not limited to, all attorneys' fees, expenses and costs whether or not court proceedings are brought, costs related to the repossession, storage, repair and disposition of the Equipment, and all incidental and consequential damages.

(iii) In addition to the foregoing contractual remedies, Lessor may exercise any and all rights and remedies of a lessor under Article 2A of the Uniform Commercial Code as adopted in the State of Texas.

(iv) All delinquent amounts owed by Lessee under this Master Lease Agreement following an Event of Default will bear interest, computed at the lesser of 1.5% per month or the maximum allowable rate of interest permitted by law, from the date each such delinquent amount becomes due until receipt of payment by Lessor in good funds.

(v) The exercise of any of the foregoing remedies by Lessor shall not constitute a termination of this Master Lease Agreement or any Leases unless Lessor expressly so notifies Lessee in writing. No failure or delay on the part of Lessor to exercise any right or remedy of Lessor under this Master Lease Agreement or under applicable law shall operate as a waiver. No express or implied waiver by Lessor of any Event of Default shall constitute a waiver of any other Event of Default by Lessee or a waiver of any right of Lessor. No remedy provided in this Section 15(b) is intended to be exclusive, but each shall be cumulative and concurrent, and shall be in addition to any other remedy described above or otherwise available to Lessor at law or in equity.

**16. RESOLUTION OF DISPUTES.**

Any controversy or dispute between the Lessee and Lessor with respect to this Master Lease Agreement or any Lease or any of the Equipment shall be resolved in a court of competent jurisdiction sitting in Dallas County, Texas, and Lessee hereby consents to jurisdiction in such court (the "Designated Forum"). In addition, and separately, any such controversy or dispute may be referred to mediation at the sole direction and election of Lessor at such place and under such procedures as Lessor may determine at the sole discretion and election of Lessor. **LESSOR AND LESSEE HEREBY WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION ARISING OUT OF OR RELATED IN ANY WAY TO THIS MASTER LEASE AGREEMENT, ANY LEASE, ANY ITEM, OR ANY OTHER AGREEMENT EXECUTED IN CONNECTION THEREWITH.**

**17. MISCELLANEOUS.**

(a) This Master Lease Agreement has been, and each Lease will have been made, executed and delivered in the State of Texas and shall be governed and construed for all purposes under and in accordance with the laws of Texas (without reference to any Texas choice of law principles) and, if applicable, the laws of the United States.

(b) Lessor and Lessee acknowledge that there are no agreements or understandings, written or oral, between Lessor and Lessee with respect to the Equipment, other than as set forth herein and in each Lease and that this Master Lease Agreement and each Lease contains the entire agreement between Lessor and Lessee with respect thereto.

(c) Signature for Lessee. Lessor may sign all financing statements for Lessee as Lessor may deem appropriate for filing at any time and in any place to protect the rights and interests of Lessor, any Assignee and any Secured Party in any of the Equipment and in any of the Leases and in this Master Lease Agreement.

(d) If any provision of this Master Lease Agreement or any Lease is contrary to, prohibited by or deemed invalid under applicable laws or regulations, such provision shall be inapplicable and deemed omitted but shall not invalidate the remaining provisions of this Master Lease Agreement or any Lease.

(e) This Master Lease Agreement and all Leases executed in connection with it shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns (as may be permitted hereunder).

(f) This Master Lease Agreement and each Lease may be executed in one or more counterparts, each of which shall be deemed an original, but all such counterparts together shall constitute one and the same instrument. If Lessor grants a security interest in all or any part of a Lease, the Equipment covered thereby and/or sums payable thereunder, only that counterpart Lease marked "Original" shall be effective to transfer Lessor's rights therein and all other counterparts shall be marked "Duplicate".

(g) All notices, consents or requests desired or required to be given hereunder shall be in writing and shall be deemed received upon the earlier of receipt or three days after mailing if mailed postage prepaid by certified or registered mail to either party at the address for such party set forth in this Master Lease Agreement or at such changed address as may be subsequently received by written notice from either party.

(h) All consents required to be contained in any Lease shall set forth such facts as Lessor may require and the consent of Lessor shall not be unreasonably withheld

(i) Paragraph headings are for convenience only and shall not be construed as part of this Master Lease Agreement.

IN WITNESS WHEREOF, the parties have executed this Master Lease Agreement on the date first written above.

| LESSEE: | LESSOR: |
|---|---|
| PHOTO STENCIL, LLC | FORUM FINANCIAL SERVICES, INC. |
| By: [signature] | By: [signature] |
| Title: CEO | Title: Vice President |

ORIGINAL

**FORUM FINANCIAL SERVICES, INC.**

**Schedule No. 8336-01**

## EQUIPMENT SCHEDULE

This Equipment Schedule is made as of this 23rd day of July, 2013 ("Lease") between FORUM FINANCIAL SERVICES, INC., a Texas corporation, having its principal place of business at 275 West Campbell Road, Suite 320, Richardson, Texas 75080 ("Lessor") and PHOTO STENCIL, LLC, a Delaware company, having its principal place of business at 4725 Centennial Blvd., Colorado Springs, Colorado 80919 ("Lessee").

Pursuant to the terms and conditions set forth in the Master Lease Agreement dated as of July 23, 2013 between Lessor and Lessee, Lessee agrees to lease the below-described Equipment from Lessor, and Lessor, by acceptance of this Lease, agrees to lease the Equipment to Lessee, on the terms set forth in this Lease. All capitalized terms not otherwise defined herein will have the meanings defined in the Master Lease Agreement.

**1. EQUIPMENT:**

| Item Number | Qty. | Mfg. | Model Number | Serial Number(s) | Description | Monthly Rent | Equipment Value |
|---|---|---|---|---|---|---|---|
| 1. | 1 | LPKF | G6080 | To Be Supplied | LPKF StencilLaser G6080 II 100W, Class 1, Long life fiber laser cutting System for stainless steel stencils and Micro cutting of sheet metal with up to 1mm (40 Mil) thickness (air-cooled, No chiller required). Maximum cutting Area of 600 mm x 800 mm (23.6" x 31/5"). Includes integrated frame clamping fixture with a max. sheet size of 29.1" x 37.4" (740x950 mm). Includes control PC and software package compatible with industry standard data formats including Gerber, Gerber-X, DXF, ODG++, HP/GL, Etc.<br><br>Includes Vision System for Fiducial Recognition, Real-time Inspection, and Stencil Master Software | $9,413.00 | $290,888.00 |
| 2. | 1 | LPKF | 225036 | | Onsite Installation & Training | $ 71.00 | $ 2,200.00 |
| 3. | 1 | | Duty | | Import Duty (US Delivery) | $ 307.00 | $ 9,500.00 |
| 4. | 1 | | Freight | | Air Freight | $ 379.00 | $ 11,700.00 |
| | | | | | **TOTAL:** | **$10,170.00** | **$314,288.00** |

**2. INITIAL TERM:** 36 Months

**3. TOTAL MONTHLY RENT:** $ 10,170.00

**EXHIBIT B**

**4. EQUIPMENT LOCATION:** 4725 Centennial Blvd., Colorado Springs, CO 80919

**5. CASUALTY VALUE:** See Annex A hereto.

**6. LEASE EXTENSION:** Provided that no Event of Default has occurred and is continuing hereunder, the Initial Term shall be automatically extended for successive 90 day periods with respect to all, but not less than all, Equipment listed above at the Monthly Rent applicable to such Equipment, until either Lessor or Lessee shall give to the other party 90 days prior written notice of termination effective at the end of the Initial Term (or at the end of each term as extended).

**7. ADDITIONAL PROVISIONS:**

a.) Lessee agrees to remit to Lessor a Security Deposit of $10,170.00 upon execution of this Equipment Schedule. The Security Deposit will be held by Lessor until (1) the receipt by Lessor from Lessee of all amounts due under this Master Lease #8336 and Equipment Schedule #8336-01 (including all property taxes, sales taxes, late fees, collection costs and reimbursement for any missing or non-working items) and (2) all Equipment has been returned to Lessor per section 8. (d) of the Master Lease Agreement, at which time the Security Deposit will be returned to Lessee.

b.) Upon 90 days receipt of written notice by Lessor from Lessee, and provided no Event of Default has occurred or is continuing hereunder, and all sums due under the Lease have been satisfied, Lessee shall have the option to purchase all, but not less than all, the Equipment at the end of the Initial Term, for its' then Fair Market Value, not to exceed $94,286.40, which is 30% of the Original Equipment Value.

c.) See Attachment "A" hereto – Order Deposit

d.) See Attachment "B" hereto – Final Agreement

UNLESS EXPRESSLY SET FORTH IN THIS LEASE AND ATTACHED HERETO, THIS LEASE TOGETHER WITH THE MASTER LEASE AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES AS TO THE LEASE AND EQUIPMENT AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. THIS LEASE CONSTITUTES AN OFFER BY LESSEE TO LEASE FROM LESSOR AND SUCH OFFER MAY NOT BE REVOKED EXCEPT BY THE WRITTEN CONSENT OF LESSOR. THIS LEASE SHALL BE DEEMED ACCEPTED BY LESSOR UPON ITS EXECUTION HEREOF IN ITS OFFICE IN TEXAS.

IN WITNESS WHEREOF the parties have executed this Lease.

**LESSEE:**

PHOTO STENCIL, LLC

BY: ____________________

TITLE: CEO

**LESSOR:**

FORUM FINANCIAL SERVICES, INC.

BY: ____________________

TITLE: Vice President

**ATTACHMENT "A"**

**TO**

**EQUIPMENT SCHEDULE 8336-01**

**PHOTO STENCIL, LLC**

Upon signing below, Lessee authorizes Lessor to make the required Order Deposit in the amount of One Hundred Twenty-Five Thousand Nine Hundred Sixty-Two and 67/100 ($125,962.00) to LPKF Laser & Electronics North America ("Vendor") upon execution of all lease documentation.

Once the Order Deposit has been made by Lessor, Lessee will be charged interim rent. Interim rent will be in the amount of One Hundred Thirty-Five and 87/100 ($135.87) per day commencing on the date that the $125,962.00 Order Deposit is made to Vendor and continuing until all the Equipment has been accepted by Lessee. Accepted means Lessee has signed Lessor's Acceptance Certificate.

Lessee acknowledges, understands and agrees that in the event Lessee is not satisfied with the delivery or installation of the Equipment that Lessee shall only look to persons other than Lessor, such as the manufacturer, installer, or Vendor and shall not assert against Lessor any claims or defense Lessee may have with reference to the Equipment, its delivery or non-delivery, or its installation

In the event this Equipment does not deliver, or should Lessee not be willing to sign the Acceptance Certificate, or should the transaction not close of any reason, Lessee shall take full responsibility and Lessor's Order Deposit will be immediately reimbursed by Lessee to Lessor.

**Accepted and Agreed:**

**Lessee: Photo Stencil, LLC**

By: [signature]

Title: CEO

Date: 7-25-13

**ATTACHMENT "B"**

**TO**

**EQUIPMENT SCHEDULE NO. 8336-01**

This Equipment Schedule (#8336-01) between Forum Financial Services, Inc., as Lessor, and Photo Stencil, LLC, as Lessee, represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**LESSEE: PHOTO STENCIL, LLC**

**BY:** ______________________

**TITLE:** CEO

**DATE:** 7-25-13

**LESSOR: FORUM FINANCIAL SERVICES, INC.**

**BY:** ______________________

**TITLE:** Vice President

**DATE:** 09/04/13

Annex A

**CASUALTY VALUES**

The Casualty Value for any Unit of Equipment shall be the greater of the replacement cost of that Unit or the applicable Casualty Value Percentage set forth below multiplied by that Unit's Equipment Value.

| Rent Payment Number | Casualty Value Percentage | Rent Payment Number | Casualty Value Percentage |
|---|---|---|---|
| 1 | 110.00 | 31 | 80.00 |
| 2 | 109.00 | 32 | 79.00 |
| 3 | 108.00 | 33 | 78.00 |
| 4 | 107.00 | 34 | 77.00 |
| 5 | 106.00 | 35 | 76.00 |
| 6 | 105.00 | 36 | 75.00 |
| 7 | 104.00 | 37 | 74.00 |
| 8 | 103.00 | 38 | 73.00 |
| 9 | 102.00 | 39 | 72.00 |
| 10 | 101.00 | 40 | 71.00 |
| 11 | 100.00 | 41 | 70.00 |
| 12 | 99.00 | 42 | 69.00 |
| 13 | 98.00 | 43 | 68.00 |
| 14 | 97.00 | 44 | 67.00 |
| 15 | 96.00 | 45 | 66.00 |
| 16 | 95.00 | 46 | 65.00 |
| 17 | 94.00 | 47 | 64.00 |
| 18 | 93.00 | 48 | 63.00 |
| 19 | 92.00 | 49 | 62.00 |
| 20 | 91.00 | 50 | 61.00 |
| 21 | 90.00 | 51 | 60.00 |
| 22 | 89.00 | 52 | 59.00 |
| 23 | 88.00 | 53 | 58.00 |
| 24 | 87.00 | 54 | 57.00 |
| 25 | 86.00 | 55 | 56.00 |
| 26 | 85.00 | 56 | 55.00 |
| 27 | 84.00 | 57 | 54.00 |
| 28 | 83.00 | 58 | 53.00 |
| 29 | 82.00 | 59 | 52.00 |
| 30 | 81.00 | 60 and thereafter | 51.00 |

Lessee Initials ________

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: 972.690.9444 x230 Fax: none

B. E-MAIL CONTACT AT FILER (optional)
swilson@forumleasing.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 25746 - FORUM

Forum Financial Services, Inc.
275 West Campbell Road
Suite 320
Richardson, TX 75080

39874361
DEDE

File with: Secretary of State, DE

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 20133609972
File Date : 17-Sep-2013

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Photo Stencil, LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| | | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY | |
| 4725 Centennial Blvd | Colorado Springs | CO | 80919 | USA | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Forum Financial Services, Inc. | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 275 West Campbell Road, Suite 320 | Richardson | TX | 75080 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
Equipment Schedule 8336-01 between Photo Stencil, LLC ("Lessee") and Forum Financial Services, Inc. ("Lessor") - See Attachment "A" for Equipment Detail:

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☒ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
39874361 8344-01



Prepared by CT Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

**EXHIBIT C**

**UCC-1 ATTACHMENT "A" TO EQUIPMENT SCHEDULE 8336-01**

**BETWEEN PHOTO STENCIL, LLC ("LESSEE") AND**

**FORUM FINANCIAL SERVICES, INC. ("LESSOR")**

| ITEM NO | QTY. | MFG | MODEL NUMBER | SERIAL NO. | DESCRIPTION |
|---|---|---|---|---|---|
| 1. | 1 | LPKF | G6080 | 1304100290 | LPKF StencilLaser G6080 II 100W, Class 1, Long life fiber laser cutting System for stainless steel stencils and micro cutting of sheet metal with up to 1mm (40 mil) thickness (air-cooled, no chiller required). Maximum cutting area of 600 mm x 800 mm (23.6"x31/5"). Includes integrated frame clamping fixture with a max. sheet size of 29.1" x 37.4" (740x950 mm). Includes control PC & software package compatible with industry standard data formats including Gerber, Gerber-X, DXF, ODG++, HP/GL, Etc.<br><br>Includes Vision System for Fiducial Recognition, Real-time Inspection, and Stencil Master Software |
| 2. | 1 | LPKF | 225036 | | Onsite Installation & Training |
| 3. | 1 | | Duty | | Import Duty (US Delivery) |
| 4. | 1 | | Freight | | Air Freight |

ORIGINAL

**FORUM FINANCIAL SERVICES, INC.** **Schedule No. 8336-02**

# EQUIPMENT SCHEDULE

This Equipment Schedule is made as of this 27th day of January, 2016 ("Lease") between FORUM FINANCIAL SERVICES, INC., a Texas corporation, having its principal place of business at 275 West Campbell Road, Suite 320, Richardson, Texas 75080 ("Lessor") and PHOTO STENCIL, LLC, a Delaware company, having its principal place of business at 13725 Struthers Road, Suite 200, Colorado Springs, Colorado 80921 ("Lessee").

Pursuant to the terms and conditions set forth in the Master Lease Agreement dated as of July 23, 2013 between Lessor and Lessee, Lessee agrees to lease the below-described Equipment from Lessor, and Lessor, by acceptance of this Lease, agrees to lease the Equipment to Lessee, on the terms set forth in this Lease. All capitalized terms not otherwise defined herein will have the meanings defined in the Master Lease Agreement.

**1. EQUIPMENT:**

| Qty. | Mfg. | Model Number | Serial Number(s) | Description | Monthly Rent Mos. 1 – 3 | Monthly Rent Mos. 4-27 | Equipment Value |
|---|---|---|---|---|---|---|---|
| 1 | LPKF | G6080 | 1304100290 | LPKF StencilLaser G6080 II 100W, Class 1, Long life fiber laser cutting System for stainless steel stencils and micro cutting of sheet metal with up to 1mm (40 Mil) thickness. Maximum cutting area of 600mm x 800mm (23.6" x 31/5"). Incl integrated frame clamping fixture with a max sheet size of 29.1" x 37.4" (740x950mm). Incl. control PC & software pkg compatible w/ industry standard data formats including.Gerber, Gerber-X, DXF, ODG++, HP/GL, etc.<br><br>Includes Vision System for Fiducial Recognition, Real-time Inspection, and Stencil Master Software | $ 1,500.00 | $ 8,924.00 | $ 314,288.00 |

**2. INITIAL TERM:** 27 Months

**3. TOTAL MONTHLY RENT:**

Months 1 - 3 $ 1,500.00

Months 4 - 27 $ 8,924.00

EXHIBIT D

JAN 18 17

4. **EQUIPMENT LOCATION:** Photo Stencil, LLC, 16080 Table Mountain Parkway, Suite 100, Golden, CO 80403

5. **CASUALTY VALUE:** See Annex A hereto.

6. **LEASE EXTENSION:** Provided that no Event of Default has occurred and is continuing hereunder, the Initial Term shall be automatically extended for successive 90 day periods with respect to all, but not less than all, Equipment listed above at the Monthly Rent applicable to such Equipment, until either Lessor or Lessee shall give to the other party 30 days prior written notice of termination effective at the end of the Initial Term (or at the end of each term as extended).

7. **PROPERTY TAXES:** Lessee and Lessor hereby acknowledge that the Lessee shall be responsible to file all required personal property tax returns and reports concerning the Equipment with all applicable governmental agencies and pay all property taxes due directly to said authorities. Should any taxing authority assess Lessor for any property taxes, late fees or other penalties with regard to any Equipment under this Master Lease or Equipment Schedule, Lessee agrees that it will reimburse Lessor within 15 days of written notification.

8. **ADDITIONAL PROVISIONS:**

   a. Equipment Schedule 8336-02 will replace Equipment Schedule 8336-01 in its' entirety. The Security Deposit of $10,170.00 from Equipment Schedule 8336-01 will be moved to this Schedule.

   b. Lessee agrees to allow Lessor to collect all scheduled payments (including but not limited to monthly lease payments) by ACH, and will execute all appropriate documentation to effectuate such.

   c. Upon 30 days receipt of written notice by Lessor from Lessee, and provided no Event of Default has occurred or is continuing hereunder, and all sums due under the Lease have been satisfied, Lessee shall have the option to purchase all, but not less than all, the Equipment at the end of the Initial Term, for $1.00.

   d. The Initial Term Commencement Date for Equipment Schedule 8336-02 will be February 1, 2016.

   e. See Attachment "A" hereto – Final Agreement

UNLESS EXPRESSLY SET FORTH IN THIS LEASE AND ATTACHED HERETO, THIS LEASE TOGETHER WITH THE MASTER LEASE AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES AS TO THE LEASE AND EQUIPMENT AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. THIS LEASE CONSTITUTES AN OFFER BY LESSEE TO LEASE FROM LESSOR AND SUCH OFFER MAY NOT BE REVOKED EXCEPT BY THE WRITTEN CONSENT OF LESSOR. THIS LEASE SHALL BE DEEMED ACCEPTED BY LESSOR UPON ITS EXECUTION HEREOF IN ITS OFFICE IN TEXAS.

IN WITNESS WHEREOF the parties have executed this Lease.

| LESSEE: | LESSOR: |
|---|---|
| PHOTO STENCIL, LLC | FORUM FINANCIAL SERVICES, INC. |
| BY: [signature] | BY: [signature] |
| TITLE: CEO | TITLE: President |

**ATTACHMENT "A"**

**TO**

**EQUIPMENT SCHEDULE NO. 8336-02**

This Equipment Schedule (#8336-02) between Forum Financial Services, Inc., as Lessor, and Photo Stencil, LLC, as Lessee, represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**LESSEE: PHOTO STENCIL, LLC**

**BY:** ____________________

**TITLE:** CEO

**DATE:** 2/5/16

**LESSOR: FORUM FINANCIAL SERVICES, INC.**

**BY:** ____________________

**TITLE:** President

**DATE:** 02/16/16

Annex A

## CASUALTY VALUES

The Casualty Value for any Unit of Equipment shall be the greater of the replacement cost of that Unit or the applicable Casualty Value Percentage set forth below multiplied by that Unit's Equipment Value.

| Rent Payment Number | Casualty Value Percentage | Rent Payment Number | Casualty Value Percentage |
|---|---|---|---|
| 1 | 110.00 | 31 | 80.00 |
| 2 | 109.00 | 32 | 79.00 |
| 3 | 108.00 | 33 | 78.00 |
| 4 | 107.00 | 34 | 77.00 |
| 5 | 106.00 | 35 | 76.00 |
| 6 | 105.00 | 36 | 75.00 |
| 7 | 104.00 | 37 | 74.00 |
| 8 | 103.00 | 38 | 73.00 |
| 9 | 102.00 | 39 | 72.00 |
| 10 | 101.00 | 40 | 71.00 |
| 11 | 100.00 | 41 | 70.00 |
| 12 | 99.00 | 42 | 69.00 |
| 13 | 98.00 | 43 | 68.00 |
| 14 | 97.00 | 44 | 67.00 |
| 15 | 96.00 | 45 | 66.00 |
| 16 | 95.00 | 46 | 65.00 |
| 17 | 94.00 | 47 | 64.00 |
| 18 | 93.00 | 48 | 63.00 |
| 19 | 92.00 | 49 | 62.00 |
| 20 | 91.00 | 50 | 61.00 |
| 21 | 90.00 | 51 | 60.00 |
| 22 | 89.00 | 52 | 59.00 |
| 23 | 88.00 | 53 | 58.00 |
| 24 | 87.00 | 54 | 57.00 |
| 25 | 86.00 | 55 | 56.00 |
| 26 | 85.00 | 56 | 55.00 |
| 27 | 84.00 | 57 | 54.00 |
| 28 | 83.00 | 58 | 53.00 |
| 29 | 82.00 | 59 | 52.00 |
| 30 | 81.00 | 60 and thereafter | 51.00 |

Lessee Initials ____